# United States Court of Appeals
# for the Fifth Circuit

No. 22-70007

United States Court of Appeals
Fifth Circuit

**FILED**

August 23, 2023

Lyle W. Cayce
Clerk

Jarrell Neal,

*Petitioner—Appellee*,

*versus*

Darrell Vannoy, Warden, Louisiana State
Penitentiary,

*Respondent—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-5390

Before Elrod, Southwick, and Graves, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Louisiana challenges the district court's grant of *habeas* relief to an inmate who had been convicted of first-degree murder and sentenced to death in 2009. The district court held that ineffective assistance of trial counsel prejudiced the defense. The State argues that the district court applied the incorrect standard of review under the Antiterrorism and Effective Death Penalty Act of 1996, and that the district court improperly granted habeas relief due to ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). We AFFIRM.

No. 22-70007

## FACTUAL AND PROCEDURAL BACKGROUND

During the late evening of March 31, 1998, Petitioner Jarrell Neal, his half-brother Zannie Neal, and his uncle Arthur Darby drove to Claudette Hurst's residence in Metairie, Louisiana. Around 11:30 p.m., Hurst awoke on a sofa in her den to see a tall, thin person dressed in black clothing aiming a rifle at Greg Vickers, who was kneeling on the floor in an adjoining room.

Hurst and her boyfriend, Fergus Robinson, ran into a bedroom with Hurst's brother. The intruder then fired several gunshots through the bedroom door, hitting both men. Robinson suffered a single fatal gunshot wound in his right thigh. Hurst's brother was shot in the arm but survived. Vickers was found dead near the house's side door with two gunshot wounds. Both victims tested positive for cocaine, and testimony revealed Robinson was a drug dealer in the area and Vickers was a frequent customer. Hurst was acquainted with Jarrell Neal, and she testified she never saw him on the night of the shooting.

During this time, a pregnant next-door neighbor and her boyfriend were sitting in their car when they heard numerous gunshots and saw two men wearing ski masks run down the sidewalk. The couple ducked down when they noticed one of the men carrying a rifle. When several shots were fired at their car, a bullet struck the pregnant neighbor in the buttocks.

During these events, a Jefferson Parish Sheriff's deputy was in the area when he heard several gunshots and then saw a black Toyota 4-Runner speeding away. The deputy followed the 4-Runner in his marked police vehicle. He called for assistance, and another police vehicle joined the pursuit. The deputies saw Jarrell Neal lean out of the passenger's window and begin shooting at them with a semi-automatic rifle. Neal fell out of the vehicle, and after a brief chase on foot, deputies subdued and arrested him.

No. 22-70007

Meanwhile, the 4-Runner's driver, Darby, fled in the vehicle before jumping out and hiding for about 15 minutes until a K-9 unit found him. Police dogs bit him while he was taken into custody. At the time of arrest, Darby wore a black sweater and jeans, while Jarrell Neal wore khaki pants. Darby was thin, while Jarrell Neal was not.

Zannie Neal was found in the back seat after the vehicle crashed. Ballistics testing later showed that casings recovered from inside the 4-Runner and bullets recovered from Robinson's body were fired from the same rifle.

The Neal brothers and Darby were indicted for first degree murder. In reaching a plea agreement with the State, Darby agreed to testify against Jarrell Neal at trial in exchange for a plea of guilty to manslaughter and a sentence of 20 years' imprisonment. The primary issue at Jarrell Neal's trial was his identity as the shooter. Darby testified that he remained in the vehicle while the two Neals entered Hurst's house, and that Jarrell Neal exited the vehicle with the rifle, shot the rifle inside Hurst's house, and came running back to the vehicle with the rifle. The State's theory relied heavily on Darby's testimony because Hurst, the only eyewitness to testify at Jarrell Neal's trial, described the shooter as matching a physical description of Darby rather than Jarrell Neal. Neal's defense counsel waived opening statement and did not present any evidence.

After a 1999 jury trial in Jefferson Parish district court, Jarrell Neal was convicted of two counts of first-degree murder and was sentenced to death. Later, a jury convicted Zannie Neal of two counts of second-degree murder. He was sentenced to life imprisonment on each count.

On direct appeal, the Louisiana Supreme Court in 2001 affirmed Jarrell Neal's conviction and sentence. The United States Supreme Court denied his petition for a writ of certiorari.

No. 22-70007

In 2002, Jarrell Neal filed a *pro se* application for post-conviction relief in Jefferson Parish district court. In 2003, the Louisiana Supreme Court vacated the trial court's order dismissing his application, held Neal was entitled to post-conviction counsel, and granted counsel a reasonable opportunity to prepare and litigate an application for post-conviction relief.

In 2011, his post-conviction counsel supplemented the post-conviction relief application before the state district court, claiming the State suppressed, as relevant to this appeal, the following three items of evidence: (1) a serology report indicating the possible presence of blood on Arthur Darby's shoes on the night of the murder; (2) a forensic report showing Jarrell Neal's shoes were excluded as the source of the bloody shoeprint found at the scene, whereas Zannie Neal's shoes could not be excluded as the source; and (3) an inconsistent prior statement of Darby from February 22, 1999, wherein Darby told the police Jarrell Neal did not have a gun when he exited the vehicle. Alternatively, Neal claimed his trial counsel was ineffective in failing to use this evidence at trial.

In 2013, the state district court dismissed Jarrell Neal's claims without an evidentiary hearing. In regard to his ineffective assistance of counsel claims, which is relevant to this appeal, the court found that the manner and extent to which Neal's trial counsel had used these three items of evidence was the result of a "strategic decision," that these decisions were not constitutionally deficient, and that, in any event, there was no reasonable probability that the outcome of the trial would have been different with use of this evidence. In 2015, the Louisiana Supreme Court denied his writ application without reasons. The United States Supreme Court denied his petition for writ of certiorari in 2016.

In 2016, Jarrell Neal filed an application for writ of habeas corpus in the United States District Court for the Eastern District of Louisiana.

No. 22-70007

Among other grounds for relief, Neal re-urged his claim that the State suppressed the three items of evidence, and that, alternatively, his trial counsel was ineffective in failing to use this evidence. In its original order on May 20, 2022, the district court denied the suppression of evidence claim but granted relief as to his exhausted ineffective assistance of counsel claim.[1]

The district court issued a supplemental order on June 10, 2022, "confirm[ing] its original order and judgment granting relief based on the exhausted ineffective assistance of counsel claim." With respect to the exhausted ineffective assistance of counsel claim, the district court determined Neal's trial counsel failed to introduce the details of the serology report, the footprint report, and Darby's prior statement as a result of oversight, not strategy. The court found the state post-conviction court's determination to the contrary was unreasonable. Further, the district court concluded that Neal's trial counsel rendered deficient performance by failing to better use the three pieces of evidence during trial, and that Neal suffered prejudice because of this deficiency.

Additionally, the supplemental order was issued in the wake of *Brown v. Davenport*, 142 S. Ct. 1510 (2022) and *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022). Those cases articulated that "even if a prisoner overcomes all of these limits [imposed by AEDPA and Supreme Court precedent], he is never entitled to habeas relief. He must still 'persuade a federal habeas court that

---

[1] In its original order, the district court also granted relief as to Neal's unexhausted ineffective assistance of counsel claim alleging failure to obtain DNA analysis from Darby's shoe, which revealed the blood on Darby's shoe belonged to one of the victims. However, three days later, the Supreme Court decided *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022). The district court entered a supplemental order and reasons recognizing that *Shinn* invalidated its grant of habeas relief as to the unexhausted ineffective assistance of counsel claim relating to DNA analysis. This unexhausted ineffective assistance of counsel claim is not at issue on appeal.

"law and justice require" relief.'" *Shinn*, 142 S. Ct. at 1731 (quoting *Davenport*, 142 S. Ct. at 1524 (quoting 28 U.S.C. § 2243; other citations omitted)). Applying this "law and justice" language, the district court here held that "under the facts and circumstances of this case, the law and justice require relief."

The district court granted habeas relief and ordered the State to retry or release Neal within 120 days of its judgment. The State timely appealed, and the district court granted the State's motion for stay of the district court's judgment.

## DISCUSSION

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020). As discussed below, the parties contest the appropriate standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

On appeal, the State challenges the district court's grant of relief as to Jarrell Neal's ineffective assistance of counsel claim concerning trial counsel's failure to use the aforementioned three items of evidence. The primary issues before this court concern the proper standard of review under AEDPA's relitigation bar and whether the district court erred in granting relief.

Specifically, the State contends (1) the district court erred in disregarding the state-court finding — that Neal's trial counsel acted strategically — without affording this determination a presumption of correctness or requiring Neal to rebut this determination with clear and convincing evidence; (2) the district court erred in determining Neal satisfied the "unreasonable application" exception to AEDPA's relitigation bar; and (3) even if Neal

No. 22-70007

could overcome AEDPA's relitigation bar, he is not entitled to habeas relief because he cannot prove he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). We address the arguments in that order.

### I.     Standard of review under AEDPA

A state prisoner may not raise a claim in federal court unless it was first exhausted in state court. *See* 28 U.S.C. 2254(b). After the state court adjudicates the claim, the prisoner must overcome "the relitigation bar imposed by AEDPA." *Greene v. Fish*er, 565 U.S. 34, 39 (2011) (citing 28 U.S.C. § 2254(d)(1)). To overcome AEDPA's relitigation bar, a prisoner's claim must satisfy one of its narrow exceptions, listed in Section 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Additionally, a state court's factual determinations are entitled to a mandatory presumption of correctness set out in Section 2254(e)(1):

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall

7

have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under AEDPA, the nature of a state prisoner's claim determines which of these provisions governs. Claims are organized into three different categories: (1) those presenting questions of law, (2) those presenting questions of fact, and (3) those presenting mixed questions of law and fact.

Claims presenting questions of law are reviewed under Section 2254(d)(1), which is further divided into two categories: the "contrary to" standard, and the "unreasonable application" standard. A state prisoner can only satisfy the "contrary to" standard if he shows the state court decision "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc). To show an "unreasonable application," the petitioner must "show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 156 (emphasis original).

Claims presenting questions of fact are reviewed under Section 2254(d)(2) and (e)(1). Under this two-step approach, a federal court reviewing a case applies Section 2254(e)(1)'s rebuttable presumption of correctness to each disputed factual determination by the state court. *See Valdez v. Cockrell*, 274 F.3d 941, 951 n.17 (5th Cir. 2001). Then, in reviewing the state court's decision, the court considers the entire factual basis and utilizes the reasonableness standard from Section 2254(d)(2) to assess, ultimately, whether the second exception to AEDPA's relitigation bar has been satisfied. *See id.* The deference to state-court factfinding required by these provisions precludes a federal court from setting "aside reasonable state-court determinations of fact in favor of its own debatable interpretation of the record." *Rice v. Collins*, 546 U.S. 333, 335 (2006). Ultimately, to clear the required

threshold, the petitioner must show "a reasonable factfinder must conclude" the state court's determination of the facts was unreasonable. *Id.* at 341.

Claims presenting mixed questions of law and fact are reviewed under a combination of these provisions; a state court's ultimate legal conclusion is reviewed under Section 2254(d)(1), while the underlying factual findings supporting that conclusion are reviewed under Sections 2254(d)(2) and (e)(1). *See Austin v. Davis*, 876 F.3d 757, 782–84 (5th Cir. 2017); *accord* Brian R. Means, Federal Habeas Manual § 3:4 (2022). This applies "not only to express findings of fact, but to the implicit findings of the state court" as well. *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

Even if a petitioner can overcome AEDPA's relitigation bar, to win habeas relief, the petitioner "must still show, on *de novo* review, that he is in custody in violation of the constitution or laws or treaties of the United States." *Langley*, 926 F.3d at 156. Thus, "even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief. And whatever else those inquiries involve, they continue to require federal habeas courts to apply [the] Court's precedents governing the appropriate exercise of equitable discretion." *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (quoting 28 U.S.C. § 2243; other citations omitted).

The district court analyzed Neal's ineffective assistance of counsel claim under Section 2254(d)(1). The State contends the district court erred by disregarding the state post-conviction court's factual determination that trial counsel acted strategically, because the state court record did not contain clear and convincing evidence sufficient to overcome the statutory presumption of correctness under Section 2254(e)(1). Neal asserts the State has waived this argument.

No. 22-70007

    *a.    Waiver*

Neal posits that this court need not decide whether a state court determination that trial counsel's decisions were "strategic" is subject to Sections 2254(d)(2) and (e)(1), because the argument is not properly preserved. The State did not argue, prior to the district court's judgments, that the state court's findings of strategy were subject to Section 2254(e)(1), and there is therefore no ruling from the district court on this issue. The first time the State raised this argument was not in its motion to reconsider but in its motion to stay pending appeal, in support of its argument it was likely to succeed on appeal.

Neal argues the State's mere quoting of the statutory language, without articulating a particular, substantive legal argument, does not preserve that argument for this court's review. *See AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009); FED. R. APP. P. 28(a)(8)(A). Furthermore, Neal asserts the State may waive or forfeit procedural defenses under AEDPA as long as they are not jurisdictional.[2] He contends waiver of an argument that the Section 2254(e)(1) standard applies to a finding by a state court is akin to waiver of a procedural defense.

The parties dispute the application of *Brumfield v. Cain*, 576 U.S. 305 (2015), to this case. The *Brumfield* Court held the State waived the issue of review under the "arguably more deferential standard set out in §

---

[2] See *Day v. McDonough*, 547 U.S. 198, 205 (2006) (interpreting Section 2244(d)(1)); *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998) (interpreting Section 2254(b)(3)); *Littlejohn v. Trammell*, 704 F.3d 817, 858 (10th Cir. 2013) ("Where the State fails to argue that the petitioner was less than diligent, . . . a diligence challenge is waived.") (interpreting Section 2254(e)(2)); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) (pre-AEDPA) (state waived procedural defense by failing to raise it in its answer); *Wood v. Milyard*, 566 U.S. 463, 472 (2012) ("a federal [habeas] court does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system").

No. 22-70007

2254(e)(1)" rather than under Section 2254(d)(2)'s "unreasonable determination of the facts" standard, because the issue had not been raised by the State in its opposition to the petitioner's application for a writ of certiorari, and first appeared in the State's merits brief after certiorari had already been granted. *Id.* at 322–23. Because the State "did not press below the theory that § 2254(e)(1) supplies the governing standard," that argument was "deemed waived." *Id.* at 322. Neal contends that the State waived its argument that Section 2254(e)(1) applies, just as the State did in *Brumfield*, by failing to raise its theory below.

The State counters that *Brumfield* is distinguishable for two reasons. First, the Court's holding relied on Rule 15.2[3] of the Rules of the United States Supreme Court, which applies to issues preserved after a grant of discretionary writ, and it does not imply a similar rule of appellate practice limiting issues on this appeal. *See id.* at 322–23. Second, the posture in this case is dissimilar to that in *Brumfield* because, here, the correct standard of review was before the trial court — the State quoted it, Neal acknowledged it, and the district court recited it but simply failed to apply it.[4] We find this second distinction persuasive.

---

[3] Currently, that rule states: "Counsel are admonished that they have an obligation to the Court to point out in the brief in opposition, and not later, any perceived misstatement made in the petition. Any objection to consideration of a question presented based on what occurred in the proceedings below, if the objection does not go to jurisdiction, may be deemed waived unless called to the Court's attention in the brief in opposition." Rule 15.2 of the Rules of the Supreme Court of the United States (2019).

[4] The State repeatedly quoted the language of Section 2254(e)(1) in its replies to Neal's filings during habeas proceedings. Moreover, the State noted the difference in standards of review between pure questions of fact and mixed questions of law and fact in its opposition to Neal's motion for partial summary judgment. Additionally, the trial court, in its order and reasons denying Neal's motion for partial summary judgment, cited Section 2254(e)(1) and observed that "a determination of a factual issue made by a State court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by

The State also maintains a party cannot waive the proper standard of review under AEDPA. The State cites to *Langley*, 926 F.3d at 162, for the proposition that the Section 2254(d) relitigation bar cannot be waived. There, this court held on rehearing *en banc*, "[t]he relitigation bar" under Section 2254(d) "constrains our ability to award habeas relief regardless of what counsel cites or does not cite." *Langley*, 926 F.3d at 162. The court reasoned that Section 2254's standard cannot be waived or forfeited because of its mandatory language: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted* with respect to any claim that was adjudicated on the merits in State court [unless statutory exceptions are satisfied]." *Id.* at 162 (emphasis in original).

We agree with the State that this reasoning should apply with equal force to a waiver argument under Section 2254(e)(1) because the same mandatory language that *Langley* held precluded waiver under Section 2254(d) also appears in Section 2254(e)(1): "[A] determination of a factual issue made by a State court *shall be* presumed to be correct. The applicant *shall* have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphases added). Similarly, regarding Section 2254(e)(2), the Supreme Court has held, "[w]here Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect." *Shinn*, 142 S. Ct. at 1736 (quotation marks and citations omitted) (emphasis in original).

Moreover, we have clarified that, under AEDPA, "[a] party cannot waive, concede, or abandon the applicable standard of review." *Ward v.*

---

clear and convincing evidence." The same observation appears in the court's original order and reasons granting habeas relief.

*Stephens*, 777 F.3d 250, 257 n.3 (5th Cir. 2015), *abrogated on other grounds by Ayestas v. Davis*, 138 S. Ct. 1080 (2018).  As a prominent treatise explains, "[i]t is generally understood that the deferential review standards under § 2254(d) and (e)(1) may not be waived by the government."  *Brian R. Means, Federal Habeas Manual* § 3:97 (2022).

Accordingly, as a party cannot waive the standard of review under AEDPA, the State has not waived its argument that "strategy" is a factual finding subject to Sections 2254(d)(2) and (e)(1).

### b.      *Presumption of correctness*

The state district court concluded Neal's trial counsel did not elicit additional details from the serology report, the footprint report, and the February 1999 interview with Arthur Darby for "strategic" reasons.  The State contends this was a finding of fact subject to Section 2245(e)(1)'s presumption of correctness and clear and convincing evidence standard.

The parties agree that the ultimate question of whether trial counsel's decision was based on a reasonable trial strategy presents mixed questions of law and fact and is reviewed using a combination of Sections 2254(d)(1) and (d)(2).  *See Morales v. Thaler*, 714 F.3d 295, 301–06 (5th Cir. 2013).  In evaluating state court findings of "strategy," the Supreme Court has stated a federal court must consider both "[w]hether the state court reasonably determined that there was a strategic decision under § 2254(d)(2)" and "whether the strategic decision itself was a reasonable exercise of professional judgment under *Strickland* or whether the application of *Strickland* was reasonable under § 2254(d)(1)."[5]  *Wood v. Allen*, 558 U.S. 290, 304 (2010).  The parties here dispute, however, whether Section 2254(e)(1) also applies.

---

[5] The Court in *Wood v. Allen* declined to decide whether Section 2254(e)(1) also applies, because even under the less deferential standard in Section 2254(d), the state

No. 22-70007

Neal avers the determination should not be reviewed under Section 2254(e)(1). He contends this court has examined state court findings of "strategy" under *Strickland* as subject solely to Section 2254(d). *See, e.g., Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009) (subjecting deficient performance under *Strickland*, including question of strategy, to Section 2254(d)); *Wardrip v. Lumpkin*, 976 F.3d 467, 477 (5th Cir. 2020); *Morales*, 714 F.3d at 302–03 (citing, but not applying, Section 2254(e)(1)).

We agree with the State that a state court determination that trial counsel's conduct at trial was the result of a strategic and tactical decision is a question of fact, *see Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999), and is analyzed under Sections 2254(d)(2) and (e)(1). *See Morales*, 714 F.3d at 301–06. Whether trial counsel's conduct constituted ineffective assistance of counsel is a separate, legal question and is analyzed under Section 2254(d)(1)'s "contrary to" and "unreasonable application" standards. *Morales*, 714 F.3d at 301–06. Thus, the state court's factual finding that trial counsel acted strategically is subject to Section 2245(e)(1)'s presumption of correctness and clear and convincing evidence standard.

Neal argues that even if the district court had subjected the state court's findings of strategy to the Section 2254(e)(1) presumption of correctness, the ultimate ruling would have been the same. He maintains that clear and convincing evidence was presented, derived solely from the record before the state court, that rebutted the state court findings of strategy.

The following was before the state post-conviction court. At trial, the State's theory, based primarily on Darby's testimony, was that both Neal

---

court's conclusion that the petitioner made a strategic decision not to pursue or present certain evidence was not an unreasonable determination of the facts. 558 U.S. 290, 304-05 (2010).

brothers entered the house but Jarrell Neal was the "one killer." In its closing argument, the prosecutor emphasized to the jury, "what [Darby] told you was the truth." Jarrell Neal's trial counsel waived opening statement and presented no evidence, but emphasized to the jury, both in cross examinations and in closing argument, that Darby was the tall, slim person dressed in all black that Hurst saw in the house, and that Darby's testimony was untrue.

Post-trial, Jarrell Neal's trial counsel stated in a sworn declaration, "I did not review the physical or forensic evidence in the case, and I did not use any experts in preparation for the trial." He specifically did not recall whether he received the serology and shoeprint evidence before trial but stated he would have used them at trial if he had them. The State produced no contrary evidence on the issue of strategy, the two affidavits the State submitted did not mention trial counsel's trial strategy, and the State did not address trial counsel's declaration in its response. With this record before it, the state post-conviction court concluded, without holding a hearing or entertaining argument, that "[c]ounsel's decisions were trial strategies which do not constitute ineffective assistance of counsel."

Neal argues there was no evidence before the state court either to rebut trial counsel's sworn declaration or to support the state court's ultimate conclusion that trial counsel's failure to conduct a proper investigation or to use the reports was trial "strategy." We agree with Neal that the declaration is clear and convincing evidence that the failure to conduct a proper investigation and utilize the forensic reports was not strategic. As the district court stated, trial counsel's declaration "admitted that there was no strategy behind his decision not to use the reports to impeach Arthur Darby." There was no evidence in the state court record to the contrary, and the record shows that utilizing the forensic reports would have been consistent with Neal's defense, which revolved around impeaching Darby's credibility.

No. 22-70007

The State challenges trial counsel's sworn declaration. We have held that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood*, 558 U.S. at 301. AEDPA forbids a federal court from using "a set of debatable inferences" to set aside a state court's factual determination. *Collins*, 546 U.S. at 342. According to the State, such debatable inferences exist here.

First, the State contends trial counsel's reference to "forensic evidence" is ambiguous. The State argues the phrase does not necessarily refer to the footprint and serology reports at issue; it could be a reference to tangible forensic evidence, such as shell casings or the floor tile with the bloody footprint. The State notes that trial counsel's use of the word "physical" along with "forensic" to modify "evidence" invites this interpretation. The State posits that, under AEDPA, so long as there were any reasonable interpretations of this phrase which did not include the footprint or the serology report, the district court was required to defer to the state court's factual finding. This argument does not persuade. It is an illogical reading of the term "forensic evidence" to exclude two entire categories of forensic evidence, particularly when trial counsel specifically refers to the serology and shoeprint reports in his declaration, and the record corroborates that trial counsel did not review the forensic evidence.

Second, the State argues trial counsel is not credible, because he made allegedly inconsistent statements: he claims both that he did not review the forensic evidence and that "I also believe that, if I had received these reports, I would have used them at trial to undermine the prosecution's case against" Neal. There is no inconsistency. In fact, this argument supports that trial counsel was not acting strategically. His statement shows that once he was shown these reports in post-conviction proceedings, he immediately

16

recognized their importance and acknowledged that if he had received and reviewed them he would have used them, but he did not.

Third, the State contends there was ample reason from the state court record to doubt the reliability of trial counsel's recollection.[6] At the time trial counsel signed his declaration, he was recalling an event which occurred 12 years prior, and he had destroyed his own contemporaneous records of this trial. Also, he stated, "[t]he reports indicate that blood was found on Arthur Darby's shoes," however, the serology report noted the *possible* presence of blood on Darby's shoes. Additionally, trial counsel only references having viewed the "forensic reports" listed in his declaration, not police reports, transcripts, *etc.*, evincing he may not have reviewed all the relevant materials from the trial record. Moreover, the State contends trial counsel's statement that he did not review the forensic reports is contradicted by the record. The State relies on the fact that it introduced testimony concerning both the shoe-print and serology reports during its case-in-chief, without objection, request for sidebar, or motion for mistrial from Neal's counsel, and that counsel cross-examined the State's witness on the shoeprint analysis.

Additionally, the State highlights that the state post-conviction court was familiar with Neal's trial counsel, as the court noted, "defendant was represented by one of the most seasoned and experienced attorneys in Jefferson Parish." Thus, the State argues the state post-conviction court was better positioned than the district court to assess the credibility of trial counsel's declaration against the evidence at trial, the prior proceedings, and the state court record.

---

[6] "A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are virtually unreviewable by the federal courts." *Kinsel v. Cain*, 647 F.3d 265, 270 n.17 (5th Cir. 2011) (quotation marks and citation omitted).

No. 22-70007

The State's arguments are unconvincing.  The length of time from trial was not an issue bearing on trial counsel's credibility.  In fact, the State submitted two affidavits from trial counsel post-conviction, one of which credited the state court in its finding that trial counsel's signature was affixed to the unattributed certified mail return receipt.  Moreover, we find that the state court did not make a "credibility determination" based on conflicting evidence.  Rather, the state court seemingly disregarded the sworn declaration, without any contrary evidence presented by the State and without conducting a hearing.[7]  The state court did not even mention trial counsel's declaration in its order, nor did it provide any analysis as to *how* trial counsel's failure to conduct a proper investigation and utilize this evidence were "strategic choices."[8]

Fourth and finally, the State argues that after-the-fact declarations from trial attorneys should be treated with the same suspicion as recanting witnesses.  "[R]ecanting affidavits and witnesses are viewed with extreme suspicion by the courts."  *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996).  "After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have

---

[7] The State correctly notes an evidentiary hearing is not required if the issues can be resolved based on the record.  *See* La. C. Cr. P. art. 929; *see also Valdez*, 274 F.3d at 951 ("a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor applying § 2254(d)'s standards of review").

[8] The state court merely stated:

His investigation and examination of witnesses were strategic choices which do not constitute ineffective assistance of counsel . . . . The defendant also asserts that his counsel was deficient for failing to consult with forensic experts, conduct forensic tests as well as consulting a forensic pathologist.  These claims are without merit.  Counsel's decisions were trial strategies which do not constitute ineffective assistance of counsel.

been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." *Harrington v. Richter*, 562 U.S. 86, 109 (2011).

As Neal states, however, recantation is viewed with suspicion because it is tantamount to an admission of perjury. *Isaac v. Cain*, 588 F. App'x 318, 326 (5th Cir. 2014) (citing *State v. Prudholm*, 446 So. 2d 729, 736 (La. 1984)). In contrast, we consider trial counsel's post-trial statements as we would any ordinary witness. *See Hughes v. Vannoy*, 7 F.4th 380, 388 (5th Cir. 2021) (crediting trial counsel's admission of no strategy); *see also, e.g., Murphy v. Davis*, 737 F. App'x 693 (5th Cir. 2018) (basing findings of strategy largely on trial counsel's testimony at state post-conviction evidentiary hearing); *Dodson v. Stephens*, 611 F. App'x 168 (5th Cir. 2015) (same); *Allen v. Stephens*, 619 F. App'x 280 (5th Cir. 2015) (same).

We conclude that the declaration itself, considered in context of the record as a whole, is sufficient to rebut the finding of strategy by clear and convincing evidence under Section 2254(e)(1).

We next examine whether Neal can satisfy the requirements of Section 2254(d). Even if he can satisfy AEDPA's exceptions to the relitigation bar, however, he must still meet the exacting requirements in *Strickland v. Washington*.

II.    *Ineffective assistance of counsel under Section 2254(d) and* Strickland

The State maintains that, even under *de novo* review, Neal cannot show he received ineffective assistance of counsel and, thus, he fails the "doubly deferential" unreasonable application exception to AEDPA's relitigation bar under Section 2254(d)(1). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks and citation omitted). Pursuant to Section 2254(d), "the prisoner must demonstrate that, under this Court's

precedents, no fairminded jurist could have reached the same judgment as the state court." *Shinn*, 142 S. Ct. at 1732 (quotation marks and citation omitted).

Under *Strickland,* to prevail on an ineffective assistance of counsel claim, a petitioner has the burden of showing (1) deficient performance, that is, that his trial counsel's performance "fell below an objective standard of reasonableness"; and (2) resulting prejudice, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. Ultimately, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. We analyze each part of the *Strickland* test separately.

### a.  *Deficient performance*

To prove counsel's performance was deficient, the petitioner must show that "counsel made errors so serious that he was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A court's "scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has cautioned that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

No. 22-70007

The objective deficiency test asks whether counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. An attorney's actions are deficient only if "no competent attorney" would have taken the action counsel did. *Premo v. Moore*, 562 U.S. 115, 124 (2011). In making this inquiry, a reviewing court is "required not simply to give [the] attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011). The issue is not what is possible, or even "what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987).

Strategic choices by counsel "are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Indeed, "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Pinholster*, 563 U.S. at 196 (quoting *Strickland*, 466 U.S. 689–90). To rebut this presumption, a prisoner must prove "that his attorney's representation was unreasonable under prevailing professional norms and the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).

Neal argues the state court decision as to counsel's deficient performance rested on an unreasonable application of clearly established federal law. "[C]onscious and informed decision[s] on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008). A reviewing court must determine not only whether counsel made a strategic decision, but also whether that decision was reasonable based on the investigation that preceded it: "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91. Purportedly tactical decisions not preceded

by reasonable investigations are not sufficiently informed and thereby not entitled to the "deference typically afforded" to trial counsel's decisions. *Escamilla v. Stephens*, 749 F.3d 380, 392–93 (5th Cir. 2014); *Williams v. Taylor*, 529 U.S. 362, 396 (2000). Neal cites several Supreme Court and Fifth Circuit cases illustrating that a counsel's lack of investigation can render the strategy unreasonable.[9]

Here, the State's trial theory that Jarrell Neal entered the house and shot the victims was based primarily on Darby's testimony that Neal "exited the 4–Runner with an AK–47 and Jarrell and Zannie went inside the residence." *State v. Neal*, 796 So. 2d 649, 657–58 (La. 2001). On the other hand, the defense theory was that Jarrell Neal "waited in the 4–Runner while Arthur Darby and Zannie Neal went inside the house and that Darby shot the victims." *Id.* at 658. "[T]he jury heard Hurst's description of the offender and the witnesses' testimony regarding [Jarrell Neal's] and Darby's clothing and physique, but, nevertheless, accepted Darby's testimony implicating the [Jarrell Neal]." *Id.* Therefore, impeaching Darby's credibility was critical to the defense at trial. Neal's trial counsel shouted at Darby and accused him of being the killer, but evidence shows trial counsel did not review and

---

[9] *See, e.g., Wiggins v. Smith*, 539 U.S. 510 (2003) (concluding the state court's finding that trial counsel made a strategic decision to focus on the petitioner's lesser responsibility rather than evidence of his background and history was unreasonable under § 2254(d)(1) due to a lack of investigation); *Hughes*, 7 F.4th 380 (affirming a grant of habeas relief arising out of an ineffective assistance of counsel claim, where trial counsel was ineffective for failing to interview the eyewitness and call another witness who would have impeached her testimony that she witnessed the incident); *Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) (finding deficient performance and an unreasonable application of clearly established law where counsel relied on discovery and did not interview witnesses); *Nealy v. Cabana*, 764 F.2d 1173, 1178 (5th Cir. 1985) (finding the attorney had no viable reasons for his failure to investigate); *Kemp v. Leggett*, 635 F.2d 453, 454 (5th Cir. 1981) (granting habeas relief where counsel failed to interview a single eyewitness or character witnesses).

investigate the serology and shoeprint analysis reports or review and identify the key inconsistencies in Darby's February 22 statement.

We review each piece of evidence.

### i.    *Serology report*

According to the serology report, analysis of the shoes attributed to Jarrell Neal and Darby showed the following: "Preliminary analysis indicated the possible presence of blood."  The jury heard nothing regarding the State's serology analysis at trial.  The State claims trial counsel made a "strategic" decision not to address the possible blood on Darby's shoes because the prosecution could have argued the blood was the result of Darby being attacked by the K9 unit, or because trial counsel was attempting to draw attention away from the fact that the same report also noted the possible presence of blood on Jarrell Neal's shoes. *See Richter*, 562 U.S. at 109 ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." (quotation marks and citation omitted)).

We agree with Neal that, even if the prosecution may have attempted to explain away the blood, trial counsel should have emphasized it as evidence that Darby was at the scene of the crime and not in the car as he claimed. Additionally, the trial record belies the State's argument that trial counsel could have been afraid of drawing out evidence that Jarrell Neal had blood on his boots.  Trial counsel repeatedly asked broad, open-ended questions to the prosecution's witnesses regarding the forensic evidence without any concern for "risk."[10]

---

[10] For instance, during direct examination, the prosecutor asked the state's detective whether "anything that [he] learned point[ed] to anyone other than Jarrell Neal committing these homicides."  The detective responded, "No, sir."  On cross-

No. 22-70007

Furthermore, as discussed above, the uncontradicted evidence before the state court was that trial counsel did not review the serology analysis prior to trial, did not consult with any forensic experts regarding the serology analysis, and did not conduct any independent testing of the samples set aside by the State for DNA analysis. Trial counsel could have argued Neal was excluded as the shooter by hiring an expert to conduct DNA testing, by cross-examining the State's witness regarding the blood on Darby's shoes (thereby allowing counsel to argue Darby was lying when he said he never entered the house), and by utilizing the shoeprint report to argue Zannie accompanied Darby into the house. Instead, trial counsel took none of these minimum steps. We find the evidence indicates trial counsel's omissions were the result of neglect, not strategic tactics.

### ii.     Shoeprint analysis

The results of the shoeprint report excluded Darby's and Jarrell Neal's shoes as matching the pattern of the bloody partial print found on the tile floor of Hurst's house, but the report could not exclude Zannie's shoes from being the source of the print. During cross examination at trial, the detective testified that the report did not match any of the defendants' shoes; however, trial counsel did not elicit testimony that the results showed Zannie's shoe was not excluded. The State argues trial counsel did not seek such testimony because it could only corroborate, not contradict, Darby's

---

examination, trial counsel asked, "Why aren't we being shown *all the analysis on everything* that you have sent to a lab?" The detective responded that, aside from the GSR analysis, "[a]ll the other evidence is negative on all three defendants." On redirect, the prosecutor asked the detective whether trial counsel could have been given access to the physical evidence in this case to conduct independent examination and testing, to which the detective responded that all he had to do was ask. "[A]t no time," however, did trial counsel request to test or even review the evidence.

testimony that Zannie entered the home.  As Neal emphasizes, though, the evidence must be viewed together, not in isolation.

In closing arguments, trial counsel attempted to highlight the bloody shoeprint: "there was a [tile] with a shoeprint.  Where is that?  Whose shoe was that?  Is that his?  Is it Zannie Neal's?  Is it Arthur Darby's? . . . Where's their clothing?  Where's the blood?"  If counsel had reviewed and investigated the shoeprint and serology analysis, he could have argued to the jury that out of the three codefendants, Zannie's and Darby's shoes placed them at the scene.  These analyses would have supported the defense theory, which featured Darby as the shooter and Zannie as the second person in the house.  Trial counsel's failure to bring that to the jury's attention was inconsistent with his actual trial strategy.

### iii.     Darby's inconsistent statements

On February 22, 1999, the day before *voir dire* began for Jarrell Neal's trial, a detective with the Jefferson Parish Sherriff's Office conducted a taped interview with Darby.  The State claims Darby's February 22 statement contains only two inconsistencies from his trial testimony, and that the inconsistent statement Neal's trial counsel did introduce was the stronger of the two.  During Darby's cross examination, Neal's trial counsel introduced Darby's February 22 statement that Neal was in the *back seat* of the vehicle when they left the scene, contrasting it to Darby's testimony during direct examination that Neal was in the *front seat* when they fled.

Neal asserts Darby's February 22 interview contained several inconsistencies from Darby's trial testimony which would have impeached his credibility before the jury.  Such inconsistencies include giving a different timeline, omitting mention of avoiding the police, lying about how he knew his own nephew, lying about his familiarity with the area, and indicating that Zannie Neal, not Jarrell Neal, instigated this incident.  Most importantly, trial

counsel did not challenge Darby's testimony at trial that Jarrell Neal exited the vehicle holding the murder weapon. During the January 22 interview, a detective asked Darby, "What kind of gun did [Jarrell Neal] have in his hand when he got out?" and Darby responded, "I didn't see when he got out." The detective clarified, "Did you notice any weapons when they first got out," to which Darby responded, "No."

The State contends this exchange could be read as relating to the specific type of gun Neal had in his hands, not whether Neal had a gun at all. Additionally, the State argues the next question and answer from Darby's statement could be read as limited to Darby's specific observations *immediately* upon Neal's exiting the vehicle. The State concedes, though, that Darby's exchanges with the detective can be read as inconsistent with Darby's trial testimony. We find these statements were inconsistent. Whether trial counsel should have introduced the inconsistent statement from February 22 is debated.

Before Darby took the stand at trial, trial counsel requested the tape of Darby's February 22 interview. The judge asked the prosecutor if he was "prepared to give counsel a copy of the tape to listen to." The prosecutor responded, "No, Your Honor. The statement was totally consistent with his prior [written] statement which [trial counsel] has already acknowledged receipt of." The prosecutor stated again, "I can assure the Court there is no '*Brady*' material in the statement." The judge eventually provided trial counsel the tape and recommended that trial counsel listen to it "at the break," before Darby's testimony. Another witness testified, and then there was a brief recess, during which trial counsel presumably listened to the tape. This chronology illustrates the State's reluctance to turn over Darby's February 22 statements, and that trial counsel likely had only one opportunity, during the brief recess, to listen to the 18-minute-long tape before Darby's

cross examination. After all, trial counsel was given the tape, not a transcript, of Darby's February 22 interview.

Even though trial counsel seemingly had little time to prepare for Darby's cross examination of his February 22 statements, trial counsel should have been on notice that Darby was going to testify that he saw Jarrell Neal exit the vehicle holding the murder weapon. During the State's opening statement, the prosecutor stated, "as [Jarrell and Zannie] get out [of the vehicle], [Darby's] going to tell you he sees Jarrell Neal with that Mack 90, semi-automatic rifle; and Zannie Neal leave the car and walk down the street." Trial counsel should have immediately noted this material inconsistency in Darby's February 22 interview when he listened to the tape, and he should have introduced it during cross examination.

Trial counsel failed to impeach Darby — the State's only witness on the issue of the identity of the shooter — on whether Jarrell Neal was carrying the murder weapon toward the scene. His failure to do so removed a powerful piece of impeachment evidence from the jury's consideration. The trial transcript shows that trial counsel's goal was to paint Darby as a liar and as the true killer. The inconsistencies noted above would have furthered, rather than detracted from, that goal.

We find that trial counsel's "strategy," if there even was one, was "unreasonable under prevailing professional norms" and was "not sound." *See Morrison*, 477 U.S. at 384. Accordingly, Neal satisfied his burden of showing deficient performance through trial counsel's failures not only to utilize the three pieces of evidence, but to even investigate the physical evidence or forensic reports.

### b.     *Prejudice*

To satisfy the second part of *Strickland*, the defendant must show the deficient performance prejudiced the defense. This requires showing

counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

In reviewing an ineffectiveness claim, the court must weigh the evidence that was unaffected by the alleged error, along with the evidence that was affected by the error and the degree to which it was affected, and then assess whether the petitioner "has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 695–96. "Even a deficient performance does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000).

Neal argues the state court's finding as to prejudice was objectively unreasonable, as trial counsel's errors undermine confidence in the verdicts. Because there was no physical evidence connecting Neal with the murder, Darby's testimony was the "cornerstone of the state's case in chief." *See Neal*, 796 So. 2d at 657–58. The only physical evidence connecting anyone directly to this crime implicates Jarrell Neal's two co-defendants — Darby and Zannie Neal — and trial counsel failed to use it. The district court found that this evidence was "clearly material" and that "the importance of the serology report to the defense cannot be overstated."

The State insists that trial counsel's errors are harmless because, under Louisiana law, Neal was still a principal to the first-degree murders of Robinson and Vickers. In Louisiana, all people concerned in the commission of a crime are not automatically guilty of the same grade of offense; a person can be convicted only of a crime for which he has the necessary mental state. *See State v. West*, 568 So. 2d 1019, 1024 (La. 1990). Principal liability still requires proving the requisite intent beyond a reasonable doubt. *State v. Brooks*, 505 So. 2d 714, 717 (La. 1987). First degree murder requires specific intent to kill, while second degree murder includes "felony murders" not requiring specific intent. La. Rev. Stat. §§ 14:30, 14:30.1. Therefore, to prove Neal was a principal to first degree murder, the State would have had to prove beyond a reasonable doubt that he had the specific intent to kill Vickers and Robinson.

The State theorizes that because a jury might have found that Neal shot at law enforcement vehicles during the police chase, it would have imputed specific intent to kill Robinson and Vickers. Neal responds that this theory is not supported by Louisiana law, because these are two distinct, separate acts. We agree.

The Louisiana Supreme Court has held the specific intent to kill applies only to the victims who are harmed in "a single consecutive course of conduct," which the courts have applied in cases where multiple people are harmed in the same room, or within seconds of each other, in one single event. *See, e.g., State v. Sonnier*, 402 So. 2d 650 (La. 1981) (two victims laying side by side shot and killed); *State v. Monroe*, 397 So. 2d 1258 (La. 1981) (two victims stabbed in the same apartment); *State v. Martin*, 376 So. 2d 300 (La. 1979) (defendant killed one person, then "immediately" killed three others). Conversely, where someone has expressed intent to kill multiple people, but at the time of the homicide only one was present and their actions could not have affected or struck a second person that was not in the vicinity, the court

has found that "no rational trier of fact could [conclude] beyond a reasonable doubt" that there was specific intent to kill the second person who was not present. *State v. Andrews*, 452 So. 2d 687, 689 (La. 1984). Consequently, we reject the State's principal liability theory.

Additionally, Neal asserts the state court failed to determine whether trial counsel's use of this evidence could have affected the death sentence imposed in this case. Indeed, even assuming Neal was convicted as a principal, his actual role in the incident speaks to his level of culpability, as seen by the State's willingness to allow Darby to plead to a crime that found him released from prison in 2015, as Neal began his federal habeas litigation under a death sentence.

To prove prejudice, Neal must show that counsel's deficient performance undermined confidence in the verdict of either guilt or penalty, by less than a preponderance of evidence. *See Williams*, 529 U.S. at 406; *Strickland*, 466 U.S. at 694. Both the State and defense theories centered on one vital point: who entered Hurst's house the night of the murders, and who stayed in the car. The State contended Darby remained in the car while the Neal brothers entered the home. This theory culminated in the State's closing argument, where it told the jury that it was Jarrell Neal, "armed to the teeth" with the rifle, who went into the house with his brother and killed both victims. Similarly, in rebuttal closing arguments, the prosecutor acknowledged that its theory as to specific intent (also required for principal liability) was based on Darby's testimony that Neal had the rifle when he went into the house.

The State argues that other circumstantial evidence corroborates Jarrell Neal's identity as the shooter and specific intent to kill the victims. Specifically, the State relies on the fact that Neal fled from the scene of the homicides, immediately after those homicides occurred, while in possession of

the gun used to commit those homicides, and then shot at the officers from the car while they were pursuing him. The Louisiana Supreme Court stated on direct review, both "Darby's testimony and [Jarrell Neal's] actions while fleeing the scene prove that [Jarrell Neal] knowingly participated in the planning and/or execution of the crime." *Neal*, 796 So. 2d at 659. Additionally, the State argues that reason and common sense confirm Darby's role in this crime: the fact that Darby was the getaway driver immediately after the murders reasonably supports the conclusion that he had the same role, just moments previously, during the murders.

Jarrell Neal's trial counsel had forensic evidence that arguably tied both Zannie and Darby to the inside of Hurst's house, diminishing the likelihood that Jarrell Neal was one of them and undercutting the State's theory. Utilizing the shoeprint report would have been objective, scientific evidence for the jury to consider as they determined who went inside. The serology report could have answered defense counsel's own question in closing argument — "Where's the blood? You shoot people at close ranges . . . blood is going to squirt out" — because the answer was, per the report, on Darby's shoe.

Moreover, but for trial counsel's failure to address the contradictions in Darby's testimony,[11] the jury would have heard that Darby lied repeatedly

---

[11] Neal argues that some minimal cross examination — approximately six transcript pages of the State's key witness at a capital trial — does not ameliorate the prejudice suffered. *See Richards*, 566 F.3d at 568 (counsel was ineffective for failing to "meaningfully bring out the significant differences" in key witnesses' accounts); *Bryant v. Scott*, 28 F.3d 1411, 1418–19 (5th Cir. 1994) (even where trial counsel's cross examination was effective, "that is not to say it could not have been improved" by additional evidence, especially where the witness being examined was "the cornerstone of the state's case in chief"); *Harrison v. Quarterman*, 496 F.3d 419, 427 (5th Cir. 2007) (though defense counsel cross examined the victim and even called their own witness to impeach her, counsel was

— most crucially, about seeing Jarrell Neal get out of the car with a gun in his hands — and, during deliberations, determined his credibility in conjunction with forensic evidence arguably putting both Darby and Zannie at the scene of the crime. Jurors' learning how Darby so recently had given a statement that would not have implicated Jarrell Neal, but then said something much different on the stand, would almost certainly have impacted deliberations. As the district court found, Jarrell Neal "could not have been convicted of first-degree murder without the testimony of Arthur Darby," and "no fair-minded jurist could conclude" that trial counsel's failure to impeach him with the forensic reports and his own inconsistencies did not undermine confidence in the verdict. These three key pieces of evidence, at the very least, create a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *See Strickland*, 466 U.S. at 695.

Accordingly, we conclude Neal has carried his burden of proving there is a reasonable probability that his convictions and death sentence were prejudiced as a result of his counsel's deficient performance. *See id.* Furthermore, we find that the state court's decision as to prejudice was unreasonable, as "no fairminded jurist could have reached the same judgment as the state court." *See Shinn*, 142 S. Ct. at 1732 (quotation marks and citation omitted); *see also* § 2254(d).

*Strickland*'s and AEDPA's requirements are satisfied. The district court was correct that "under the facts and circumstances of the instant case, the law and justice require relief." *See Davenport*, 142 S. Ct. at 1524.

AFFIRMED.

---

ineffective for calling a second witness to impeach her on the same point when there were some differences and the case "turned on witness testimony").